| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------------x<br>:<br>PEGGY MORRIS, :<br>:<br>   *Plaintiff,* :<br>:<br>   - against - :<br>:<br>ANNE KATZ, GILBERT O. BADILLO, :<br>MICHAEL J. PINCKNEY, JONATHAN :<br>LIPPMAN, CHIEF ADMINISTRATIVE JUDGE, :<br>FERN A. FISHER, DEPUTY CHIEF :<br>ADMINISTRATIVE JUDGE, SHELDON J. :<br>ROSEN, ESQ., MICHAEL J. MOTTO, MARIBEL :<br>TEJADA BOLIVAR, LISA PETERSON, NEW :<br>YORK STATE DIVISION OF HOUSING AND :<br>COMMUNITY RENEWAL, NEW YORK CITY :<br>DEPARTMENT OF INVESTIGATION, :<br>MARSHALS & SHERIFF BUREAU, NYC :<br>HUMAN RESOURCES ADMINISTRATION, :<br>DEPARTMENT OF SOCIAL SERVICES, ADULT:<br>PROTECTIVE SERVICES, ALAN BARNES, :<br>BRUCE A. SMITH, ROCHDALE VILLAGE, :<br>INC., and NYC MARSHAL GEORGE G. :<br>ESSOCK, LEROY COMRIE, RUBEN WILLS, :<br>GREGORY MEEKS, MALCOLM SMITH, and :<br>SHIRLEY HUNTLEY, LINDA GIBBS, DEPUTY :<br>MAYOR, John Doe #1-10, and Jane Doe #1-10, :<br>:<br>   *Defendants.* :<br>------------------------------------------------------------x | NOT FOR PUBLICATION<br><br><br><br><br>MEMORANDUM AND ORDER<br><br>11-CV-3556 (JG) |

JOHN GLEESON, United States District Judge:

        Plaintiff Peggy Morris filed this *pro se* 42 U.S.C. § 1983 action on July 25, 2011, alleging a conspiracy among the named defendants to unlawfully evict her from her Rochdale Village, Queens apartment. I denied Morris's request for an order to show cause why Morris's eviction should not be enjoined, which Morris filed with the complaint, because the eviction had already occurred. I also denied her application dated July 27, 2011 for an order directing the

defendants to show cause why this Court should not issue an order containing specific directives. I grant Morris's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Morris has named 23 defendants to this action; I dismiss the following 18 defendants: Anne Katz, Michael J. Pinckney, Gilbert O. Badillo, Jonathan Lippman, Fern A. Fisher, New York Division of Housing and Community Renewal ("HCR"), New York Department of Investigation ("DOI"), New York City Human Resources Administration, Department of Social Services ("DSS"), Adult Protective Services ("APS"), Alan Barnes, Bruce A. Smith, George Essock, Leroy Comrie, Ruben Wills, Gregory Meeks, Malcolm A. Smith, Shirley Huntley and Linda Gibbs. I also dismiss the claims brought pursuant to 42 U.S.C. §§ 1985 and 1986. The 42 U.S.C. § 1983 claim against the remaining defendants may proceed as set forth below.

BACKGROUND

On July 25, 2011, Morris filed this complaint and a request for an order to show cause in an attempt to stop her eviction from her apartment in Queens. However, she had been evicted that morning. In her complaint she alleges that the eviction was obtained in violation of her due process rights.

Morris alleges that she occupied the Rochdale Village apartment at 163-25 130th Avenue, Jamaica, New York for approximately ten years, first as a "licensee of the shareholder of record, Osborne Miller," and after his death on December 16, 2009, as a "tenant of Rochdale by implied consent." Compl. at 4. She was not on the lease or income affidavit. *Id.* at 9.

The process leading to Morris's eviction began on December 14, 2009, when, she alleges, unspecified "defendants first attempted to have me evicted by two arrests." *Id.* at 6. Thereafter, Rochdale began eviction proceedings. Morris alleges that she was never provided proper notice of the proceedings, her multiple requests for hearings on the issue of proper service

were denied, and Rochdale changed the lock on the mailbox at her apartment so that she could no longer receive mail at that address. On July 16, 2011, when Morris was in Florida, a friend informed her that warrant of eviction notices had been sent to her, the Estate of Osborne Miller and Jane and Jane Doe at an address in Queens that is not Morris's. Eviction was scheduled for July 25, 2011 and was conducted at 9:30 AM that day.

Morris alleges that Rochdale Village has hired attorney Sheldon Rosen to unlawfully evict tenants at Rochdale Village. She alleges that Defendant Motto, the process server, Defendants Bolivar and Peterson, notaries public, defendant city marshal Essock and defendant housing court judges Katz, Badillo and Pinckney are complicit in this "racketeering" enterprise that "has impacted thousands of low-income and minority [sic] residing in government housing." She alleges that defendant state court judges Lippman and Fisher, defendant legislators Comrie, Wills, Meeks, Smith and Huntley, and defendant deputy mayor Linda Gibbs have failed to investigate or intervene in this alleged scheme and that the three defendant city agencies failed to provide her with the aid she sought.

## DISCUSSION

A.  *Standard of Review*

Under 28 U.S.C. § 1915 (e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." However, a court must construe a *pro se* litigant's pleadings liberally, *see Chavis v. Chappius*, 618 F.3d 162, 171 (2d Cir. 2010), especially when those pleadings allege civil rights violations, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191-93 (2d Cir. 2008). A *pro se* complaint should not be

dismissed without granting a *pro se* plaintiff leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam).

Although courts must read *pro se* complaints with "special solicitude" and interpret them to raise the "strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-76 (2d Cir. 2006) (quotation marks omitted), a complaint must plead enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).  Similarly, a complaint is insufficient to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Morris brings this action pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, alleging violations of "Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution."  Compl. at 3, 4.[1]  She seeks "declaratory, injunctive and other appropriate relief."  *Id.* at 4.

In order to maintain a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) "the conduct complained of [was] committed by a person acting under color of state law," and (2) "the conduct complained of . . . deprived a person of rights, privileges or immunities

---

[1] To the extent Morris seeks to allege violations of the New York state constitution and New York City regulations, *see* Compl. ¶ II, they are not properly raised under § 1983; only violations of the United States Constitution or of federal laws may be alleged pursuant to that statute.

4

secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Section 1983 itself creates no substantive rights, "[but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma v. Turtle*, 471 U.S. 808, 816 (1985)).

In order to state a claim for deprivation of a property right under § 1983, three elements must be proven: (1) that there was a property interest; (2) which was deprived under color of state law; and (3) the deprivation must be without due process. *Mehta v. Surles,* 905 F.2d 595, 598 (2d Cir. 1990). Assuming *arguendo* that the eviction and seizure of Morris's property was a deprivation of property under color of state law, she still must prove that these acts were done without due process of law. *Paratt v. Taylor*, 451 U.S. 527 (1981).

B. *Morris's Claims Against the Defendant Judges*

Morris's claims against Judges Pinckney and Badillo of the Housing Part, Civil Court of the City of New York, Queens County, and Judge Anne Katz of the Civil Court of the City of New York, Queens County Branch, must be dismissed because, as judges, they have absolute immunity from actions for damages for judicial acts performed in their judicial capacities. *See Warden v. Dearie*, 172 F.3d 39 (2d Cir. 1999) (citing *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)) (judges are immune from suit except when sued for acts not taken in judicial capacity and acts taken in complete absence of all jurisdiction). The absolute judicial immunity of a court and its members "is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Mireles*, 502 U.S. at 11, 13 (quotation marks and citations omitted). Moreover, the Federal Courts Improvement Act of 1996 extends judicial immunity to most actions seeking prospective injunctive relief. This immunity may be overcome only if the court is alleged to

5

have taken nonjudicial action or if the judicial action taken was "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. 9, 11-12. Morris's only claims against Judges Badillo, Katz and Pinckney appear to involve their rulings in the 2009 housing court proceedings. Accordingly, the claims against them are dismissed because they seek monetary relief against defendants who are immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B)(iii).

The Honorable Jonathan Lippman, Chief Judge of the Court of Appeals of the State of New York, and the Honorable Fern A. Fisher, Office of the Deputy Chief Administrative Judge, are named only in their administrative capacities. *See Huminski v. Corsones*, 396 F.3d 53, 75 (2d Cir. 2005) ("A judge is not protected under the doctrine of judicial immunity . . . if the action in question is not judicial in nature, as when the judge performs an administrative, legislative or executive act."); *Mangiafico v. Blumenthal*, 471 F.3d 391, 394 (2d Cir. 2006) ("[T]he critical inquiry is not the official position of the person seeking absolute immunity, but the specific action for which that person seeks immunity.") However, the only allegation asserted with respect to these judges is the conclusory statement that they are involved in a conspiracy with Rochdale Village, its lawyers and Queens County Housing Court to evict tenants without the requisite notice, and that they have failed to "respond appropriately and to initiate proper investigations to complaints and information" regarding this alleged conspiracy. Compl. ¶ III(A), (G) (I). Morris has alleged no facts from which I could draw the reasonable inference that these defendants are liable for the conspiracy alleged. Moreover, the alleged failure to investigate fails to state a claim for a violation of Morris's civil rights. Thus, I find no facial plausibility in Morris's claims against these judges, and accordingly, those claims are dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

C. *Morris's Claims Against Marshal Essock*

In addition to absolute judicial immunity, "some officials who are not judges but 'who perform functions closely associated with the judicial process' have also been accorded such immunity." *Dorman v. Higgins*, 821 F.2d 133, 137 (2d Cir. 1987) (citation omitted) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)) (holding that probation officers are entitled to quasi-judicial immunity for carrying out a court order). Such quasi-judicial immunity is granted based on "functional categories, not the status of the defendant." *Briscoe v. LaHue,* 460 U.S. 325, 342 (1983). Morris alleges that she was never given notice by the state court and that the warrant was thus improperly issued. The marshal is not responsible for verifying the processes that precede the issuance of the warrant; he is responsible only for verifying its facial validity and, if facially valid, executing it.[2] A city marshal may conduct an eviction or legal possession only after a court has ruled on the landlord's petition for removal and has issued a warrant of eviction to the marshal. Since Morris seeks to hold Marshal Essock liable based upon his execution of a facially valid warrant of eviction in accordance with his duty to carry out mandates of the court, the action against him must be dismissed on the basis of quasi-judicial immunity. *See Maldonado v. New York Cty. Sheriff*, No. 05 Civ. 8377, 2006 WL 2588911 *3 (S.D.N.Y. Sept. 6, 2006) (dismissing civil rights claim against Sheriff on ground of quasi-judicial immunity).

D. *Morris's Claims Against the Defendant Legislators*

Morris also names as defendants New York State Senators Shirley Huntley and Malcolm A. Smith, Representative Gregory Meeks of the United States House of

---

[2] "Marshals primarily enforce orders from Civil Court cases, including collecting on judgments, towing, seizing utility meters and carrying out evictions. Marshals collectively perform approximately 25,000 evictions per year. Marshals are regulated by DOI but, unlike the City Sheriff, they are not City employees." *See* http://www.nyc.gov/html/doi/html/marshals/marshals.shtml (last visited August 8, 2011).

7

Representatives, and two members of the New York City Council, Leroy Comrie and Ruben Wills.

Each of these federal, state and local legislators is absolutely immune for his or her legislative acts.  The Speech or Debate Clause of the United States Constitution, U.S. Const. art. I, § 6, provides that "for any Speech or Debate in either House," Senators and Representatives "shall not be questioned in any other Place."  When this legislative immunity applies, Senators and Representatives are shielded from any award of damages or prospective relief, and cannot be put to the "burden of defending themselves."  *Supreme Ct. of Va. v. Consumers Union of the U.S.*, 446 U.S. 719, 732 (1980) (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967)).  In New York, article 3, § 11 of the state constitution echoes the federal language and provides that, "[f]or any speech or debate in either house of the legislature, the members shall not be questioned in any other place." N.Y. Const. art. 3, § 11.  The New York Court of Appeals has held that this clause confers immunity for any acts which are an integral part of the legislative process.  *People v. Ohrenstein*, 77 N.Y.2d 38, 53-54 (1990).  Furthermore, the clause shields New York legislators from the burden of having to defend against suits in the New York state courts that arise out of their legislative acts.  *See Eastland v. United States Serviceman's Fund*, 421 U.S. 491, 501-02 (1975) (legislative immunity and privilege must be construed broadly to effectuate its purpose to protect legislators from judicial interference, intimidation and hostility); *see also Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 94 (S.D.N.Y. 2003) (doctrine of legislative immunity should be applied broadly to protect state and local legislators since it is an "outgrowth of the Speech or Debate Clause"); *Urbach v. Farrell*, 229 A.D.2d 275, 656 N.Y.S.2d 448, 450 (3d Dep't 1997).  Absolute legislative immunity has also been extended to local legislators for legislative acts performed in their individual capacities.  *Bogan v. Scott-*

8

*Harris*, 523 U.S. 44, 54 (1998); *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 210 (2d Cir. 2003).

Morris's only allegation against these legislators is that they have "encourage[d] and promote[d] the racketeering enterprise by their failure to respond appropriately and to initiate proper investigations to complaints and information regarding the pervasive misconduct and corruption." Compl. ¶ III(J). Even assuming that each of these defendants was asked to intercede and chose not to do so, these acts were within the "sphere of legitimate legislative activity" and thus the legislators are entitled to absolute immunity from this action. Thus, the claims against Defendants Meeks, Comrie, Wills, Smith and Huntley are dismissed. 28 U.S.C. § 1915(e)(2)(b)(iii).

E. *Morris's Claims Against Deputy Mayor Linda Gibbs*

A § 1983 plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Thus, supervisory officials cannot be held liable for the constitutional violations of their subordinates. *See id.* Although Morris names as a defendant Linda Gibbs, Deputy Mayor for Health and Human Services, there is no allegation in the complaint or its attachments that Gibbs was personally involved in the alleged deprivation of Morris's constitutional rights. Thus, Gibbs is not a proper party to this action and the 42 U.S.C. § 1983 claims against her are dismissed. 28 U.S.C. § 1915 (e)(2)(B)(ii).

F. *Morris's Claims Against the Defendant State Agencies*

Morris also brings her § 1983 claim against the New York State Division of Housing and Community Renewal ("HCR"). HCR is immune from suit under the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The

9

Eleventh Amendment bars suits against states, or their agencies, whether the plaintiff seeks relief at law or in equity, absent the state's consent to suit or an express or statutory waiver of immunity. *Id.* at 99-102; *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."). Because HCR is a New York state agency and state agencies are protected under the Eleventh Amendment from claims for monetary and equitable relief, the claim against HCR is dismissed. 28 U.S.C. § 1915(e)(2)(B)(iii). Moreover, the Supreme Court has determined that states and state agencies are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63-66 (1989). Thus, Morris has also failed to state a claim against HCR upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

  G. *Morris's Claims Against the Defendant City Agencies*

    Morris also names as defendants two city agencies: the New York City Department of Investigation, Marshals and Sheriff Bureau ("DOI") and Adult Protective Services ("APS"). Neither of these city agencies is a proper party to a § 1983 action. The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Admin. Code & Charter Ch. 16 § 396. Thus, the DOI and APS, as agencies of the City of New York, lack independent legal existence and cannot be sued under § 1983. *See Laday v. Ramada Plaza Hotel Laguardia*, No. 07-CV-0450, 2007 WL 526613, at *4 (E.D.N.Y. Feb 13, 2007) ("To the extent plaintiff seeks to state a § 1983 claim against a municipal entity, such as the New York City Police Department, he must bring the action against the City of New York."); *Lovanyak v. Cogdell*, 955 F. Supp.

172, 174 (E.D.N.Y. 1996) (agencies of the City of New York are not subject to suit and cannot be held independently liable for § 1983 claims against them). Accordingly, Morris's § 1983 claims against defendants DOI and APS are dismissed for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

If Morris seeks to bring a claim against the municipality, then she must name the City of New York. In order to sustain a claim for relief under 42 U.S.C. § 1983 against a municipal defendant such as the City of New York, a plaintiff must show the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978)). Even when liberally construed, the present complaint cannot reasonably be interpreted as alleging facts sufficient to demonstrate that Morris suffered any damages as a result of any policy or custom of the City of New York.

H. *Morris's Claims Against Private Parties*

Morris names as defendants the law firm of Sheldon J. Rosen, P.C., Sheldon J. Rosen, Esq., and Maribel Tejada Boliver and Lisa Peterson, employees of Sheldon J. Rosen P.C. None of these private parties acts under color of state law within the meaning of 42 U.S.C. § 1983. Private conduct, no matter how discriminatory or wrongful, is generally beyond the reach of § 1983. *Academy v. Tennessee*, 531 U.S. 288, 304-05 (2001) (discussing whether athletic association was a state actor within the reach of § 1983); *Rendell-Baker v. Kohn*, 457 U.S. 830, 838-42 (1982) (affirming dismissal of § 1983 claim because defendants were not state actors); *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978) (stating § 1983 reaches only

11

deprivations of rights by persons acting under color of law); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173 (1972) (distinguishing private conduct from state action).

However, construing the complaint liberally, Morris alleges that the state court officials were acting in collusion with these private actors to evict tenants from Rochdale Village by creating and processing false documents. "[A] private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'" *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). A complaint must allege facts demonstrating that the private entity and a state actor "acted in concert to commit an unconstitutional act." *Id.* (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). There must be "such a close nexus" between the private actor and the state that underlying conduct "may be fairly treated as that of the state itself." *Tancredi v. Metro Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). Although Morris has not demonstrated a sufficient nexus between these private actors and the state actors, in light of the principle that state action may be found "where the private actor operates as a willful participant in joint activity with the State or its agents," *Tancredi*, 316 F.3d at 313, and because I am obligated to liberally construe the complaint, I decline to dismiss these private actors at this juncture.

I. *Morris's Claims Against Defendants Barnes and Smith*

Although named in the caption and in the list of defendants on page two of the complaint, Defendants Barnes and Smith are not mentioned in any allegation in the complaint. Accordingly, the complaint against them is dismissed without prejudice for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

J.  *Morris's Claim Against the Process Server*

Morris also asserts the foregoing claim against Michael J. Motto, a process server. Assuming without deciding that Morris had a property interest in the apartment that she was inhabiting despite not being on the lease, she is entitled to protection of the federally secured Fourteenth Amendment right to procedural due process. An essential part of this right in the context of an eviction proceeding is notice – either actual notice of the eviction or constructive notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Schroeder v. City of New York*, 371 U.S. 208, 211 (1962); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Deprivation of that right is a valid claim, cognizable in this Court, so long as it is accomplished by one acting under color of State law. *Adickes v. S. H. Kress & Co.*, 398 U.S. at 166. A duly licensed state process server, executing a false affidavit of service of a summons on a defendant in a civil proceeding, may well be directly responsible for the absence of notice. Such "sewer service" is a denial of due process by one engaged in "essentially and traditionally a public function." *United States v. Wiseman*, 445 F.2d 792, 796 (2d Cir. 1971). Therefore, Morris's claim against Defendant Motto may proceed.

K.  *Morris's §§ 1985 and 1986 Claims*

Morris has not stated a claim under 28 U.S.C. § 1985(3). A claimant seeking to establish a § 1985(3) violation must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws . . . [;] [and] (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000) (citation and quotation marks omitted). The Second Circuit has also held that a § 1985(3)

13

conspiracy "must be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Mian v. Donaldson, Lufkin & Jenrette Sec.*, 7 F.3d 1085, 1088 (2d Cir. 1993); *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).

Morris's § 1985 claim fails because she does not allege any facts that would permit the Court to conclude or infer that the named defendants were engaged in a conspiracy or that she was targeted on account of her race. While the occupants of Rochdale may be primarily African-American, *see* Compl. at 4, this does not mean that those evicted are targeted based on their race. To the extent Morris seeks to raise this claim on behalf of a class of "low-income" tenants, the Supreme Court has stated that § 1985(3) was not "intend to reach conspiracies motivated by bias towards others on account of their economic . . . . status. . ." *United Brotherhood of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 827 (1982). Morris pleads no facts from which I could infer discriminatory intent on the part of any defendant. Therefore, I dismiss her § 1985 conspiracy claim as against all defendants. 28 U.S.C. § 1915(e)(2)(B)(ii).

Morris also fails to state a claim under § 1986. A § 1986 action may be brought against anyone who had power to prevent or aid in the prevention of a wrong actionable under § 1985 and neglected to do so. *Mian*, 7 F.3d at 1088. Here, Morris's failure to state a claim under § 1985 is fatal to her § 1986 claim. *Id.*; 28 U.S.C. § 1915(e)(2)(B)(ii).

## CONCLUSION

Accordingly, Morris's 42 U.S.C. §§ 1985 and 1986 claims are dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii). In addition, the claims against the following defendants are dismissed: Anne Katz, Michael J. Pinckney, Gilbert O. Badillo, Jonathan Lippman, Fern A. Fisher, New York Division of Housing and Community Renewal ("HCR"), New York Department of Investigation ("DOI"), NYC Human Resources Administration, Department of

Social Services ("DSS"), Adult Protective Services ("APS"), Alan Barnes, Bruce A. Smith, George Essock, Leroy Comrie, Ruben Wills, Gregory Meeks, Malcolm A. Smith, Shirley Huntley and Linda Gibbs.  28 U.S.C. § 1915(e)(2)(B).  No summons shall issue against these defendants.  The Clerk of Court is directed to remove them from the caption.

Morris's complaint against Defendants Sheldon J. Rosen, P.C., Sheldon J. Rosen, Esq., Michael J. Motto, Maribel Tejada Boliver, Lisa Peterson and Rochdale Village, Inc. may proceed.  The Clerk of the Court is directed to issue a summons against those defendants and the United States Marshals Service is directed to serve the complaint and this Order on them without prepayment of fees.  The case is referred to the Honorable Lois Bloom, United States Magistrate Judge, for pretrial supervision.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
       September 4, 2011